# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

RICHARD MICHAEL WEEDMAN,

                          Petitioner,

vs.

EARL HOUSER,

                          Respondent.

Case No. 3:21-cv-00083-RRB

## ORDER OF DISMISSAL

Richard Michael Weedman, representing himself from Goose Creek Correctional Center, where he is housed as a pretrial detainee, filed a habeas petition under 28 U.S.C. § 2241, claiming that the state court is violating his rights in a criminal case in which he is a defendant.[1]  On June 30, 2021, after the Court withdrew the dismissal of this case for failure to prosecute, Mr. Weedman paid the $5.00 filing fee.[2]  The case now is ready for review.

---

[1] Docket 1; *State of Alaska v. Richard Michael Weedman*, Alaska Superior Court Case No. 3DI-19-00346CR.

[2] Dockets 4–8.

The Court takes judicial notice[3] that Mr. Weedman has been charged with the Class A Felony of Assault 1, as well as misdemeanor assault.[4] The state court record also shows that he has been incarcerated since August 14, 2019, and that several pretrial conferences have been held in his case, the last one being held on June 14, 2021.[5]

The Supreme Court for the State of Alaska and its Chief Justice have issued Special Orders regarding COVID-19 and criminal jury trials. Trials involving both felonies and misdemeanors are now being held, after being postponed beginning on March 15, 2020, when Alaska's speedy trial rule was suspended.[6] In the spring

---

[3] Judicial notice is the "court's acceptance, for purposes of convenience and without requiring a party's proof, of a well-known and indisputable fact...." *Black's Law Dictionary* (11th ed. 2019); *see also Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 2d 983, 990 (E.D. Cal. 2012) ("Courts routinely take judicial notice of publicly available records ... from other court proceedings.") (citing *Engine Mfrs. Ass'n v. South Coast Air Quality Management Dist.*, 498 F.3d 1031, 1039 n.2 (9th Cir. 2007) (additional citation omitted)); Fed. R. Evid. 201.

[4] *See* https://records.courts.alaska.gov/eaccess/searchresults, *Alaska v. Weedman*, 3DI-19-00346CR.

[5] *Id.*

[6] *See* http://www.courts.alaska.gov/covid19/index.htm#socj (*see, e.g.*, 6/21/21 Order No. 8289, and 3/15/20 Order No. 8130).

and summer of this year, vaccinations for COVID-19 were being given to Alaskans in more significant numbers,[7] and trials gradually resumed.[8]

## SCREENING REQUIREMENT

Federal courts have general habeas jurisdiction under 28 U.S.C. § 2241.[9] A petitioner may properly challenge state pretrial detention under § 2241.[10] But a court must "promptly examine" a habeas petition, and "if it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion...."[11] In conducting its review of a self-represented litigant's pleadings, a court must liberally construe the pleadings and give the petitioner the benefit of the doubt.[12]

---

[7] *See id*.; https://alaska-coronavirus-vaccine-outreach-alaska-dhss.hub.arcgis.com (as of 7/6/21, 639,138 Covid-19 vaccine doses had been given in Alaska).

[8] *See* http://www.courts.alaska.gov/covid19/index.htm#socj.

[9] *See Magana-Pizano v. INS*, 200 F.3d 603, 608 & n.4 (9th Cir. 1999).

[10] *See Stow v. Murashige,* 389 F.3d 880, 885–88 (9th Cir. 2004).

[11] Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. The same procedural rules for 28 U.S.C. § 2254 and § 2255 govern 28 U.S.C. § 2241.

[12] *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc)).

## DISCUSSION

A writ of habeas corpus allows an individual to test the legality of being detained or held in custody by the government.[13] The writ "is a vital 'instrument for the protection of individual liberty' against government power."[14] 28 U.S.C. § 2241 provides federal courts with general habeas corpus jurisdiction[15] over a prisoner "in custody in violation of the Constitution or laws or treaties of the United States."[16] However, as explained below, Mr. Weedman's federal petition is premature.

I.    **Appropriate Relief**

Section 2241 is the proper avenue for a state prisoner who wishes to challenge state custody without a state judgment.[17] For relief, Mr. Weedman requests his "release from unconstitutional confinement."[18] A speedy trial claim may be reviewed under § 2241 if a pretrial detainee is seeking to compel the state

---

[13] *Rasul v. Bush*, 542 U.S. 466, 474 (2004).

[14] *Gage v. Chappell*, 793 F.3d 1159, 1167 (9th Cir. 2015) (*quoting Boumediene v. Bush*, 553 U.S. 723, 743 (2008)).

[15] *See Magana-Pizano*, 200 F.3d at 608 & n.4.

[16] 28 U.S.C. § 2241(c)(3).

[17] *Stow*, 389 F.3d at 886 ("[T]he general grant of habeas authority in § 2241 is available for challenges by a state prisoner who is not in custody pursuant to a state court judgment- for example, a defendant in pre-trial detention or awaiting extradition.") (quoting *White v. Lambert,* 370 F.3d 1002, 1006 (9th Cir. 2004)).

[18] Docket 1 at 8.

to bring him to trial, but federal courts do not address the merits underlying the state charges.[19]

## II.    Abstention

The *Younger* abstention doctrine provides that federal courts may not generally exercise jurisdiction when doing so would interfere with state judicial proceedings.[20]   The core of *Younger* abstention is that a federal court cannot interfere with pending state court criminal proceedings, absent a "showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief."[21]   And the Ninth Circuit Court of Appeals has "specifically rejected … the argument that a claimed violation of the Speedy Trial Clause … sufficed in and of

---

[19] *See Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 489–90 (1973) ("Petitioner does not, however, seek at this time to litigate a federal defense to a criminal charge, but only to demand enforcement of the Commonwealth's affirmative constitutional obligation to bring him promptly to trial.") (citation omitted); *McNeely*, 336 F.3d at 832 ("Because his Sixth Amendment right to a speedy trial has been violated, Petitioner should be immediately released from custody with prejudice to re-prosecution of the criminal charges.  *See Strunk v. United States,* 412 U.S. 434, 439–40 … (1973) (holding that violation of Sixth Amendment speedy trial rights requires dismissal)."); *Stow,* 389 F.3d 880 (affirming habeas relief for state pre-trial detainee who claimed double jeopardy); *Dominguez v. Kernan*, 906 F.3d 1127 (9th Cir. 2018) (a state pretrial detainee should bring federal double-jeopardy challenge under § 2241).

[20] *See Younger v. Harris*, 401 U.S. 37, 41 (1971).

[21] *Younger*, 401 U.S. at 54*; see also Carden v. Montana*, 626 F.2d 82, 84 (9th Cir. 1980) (In *Perez v. Ledesma,* 401 U.S. 82, 85 (1971), the Supreme Court "limited the category of 'extraordinary circumstances' to encompass only 'cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction,' or where 'irreparable injury can be shown.'").

itself as an independent 'extraordinary circumstance' necessitating pre-trial

habeas consideration."[22]

A federal court

> must abstain under *Younger* if four requirements are met: (1) a state-initiated proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not barred from litigating federal constitutional issues in the state proceeding; and (4) the federal court action would enjoin the proceeding or have the practical effect of doing so, *i.e.*, would interfere with the state proceeding in a way that *Younger* disapproves.[23]

The Court of Appeals for the Ninth Circuit has directly addressed abstention,

regarding the claim of a state court violating the right to a speedy trial, explaining:

> *Younger* does not "require[ ] a district court to abstain from hearing a petition for a writ of habeas corpus challenging the conditions of pretrial detention in state court" where (1) the procedure challenged in the petition is distinct from the underlying criminal prosecution and the challenge would not interfere with the prosecution, or (2) full vindication of the petitioner's pretrial rights requires intervention before trial.[24]

The State of Alaska has an important interest in enforcing its criminal laws

and procedures, and Mr. Weedman's criminal case in state court remains ongoing.

Mr. Weedman's allegation, that he is being denied his right to a speedy trial in state

---

[22] *Brown v. Ahern,* 676 F.3d 899, 901 (9th Cir. 2012) (citing *Carden,* 626 F.2d at 84).

[23] *San Jose Silicon Valley Chamber of Commerce Political Action Committee v. City of San Jose*, 546 F.3d 1087, 1092 (9th Cir. 2008).

[24] *Page v. King,* 932 F.3d 898, 903 (9th Cir. 2019) (citing *Arevalo,* 882 F.3d at 764, 766–67).

court, should be addressed in his state court criminal proceedings.[25] The

abstention "doctrine requires dismissal of a habeas petition that prematurely raises

a Speedy Trial defense to state prosecution."[26] This Court should not interfere

with the trial court's fact-finding responsibilities and legal decisions in that case,

unless "full vindication of the petitioner's pretrial rights requires intervention before

trial."[27] Because federal intervention is not required here, where there is no

indication of "harassment or prosecutions undertaken by state officials in bad faith

without hope of obtaining a valid conviction," or showing of "irreparable injury," this

Court must abstain.[28]

III. **Exhaustion**

Exhaustion is required under common law before bringing a federal petition

for a writ of habeas corpus under 28 U.S.C. § 2241.[29] Although there is no

---

[25] *See Brown,* 676 F.3d at 900–01 (A "federal court's exercise of jurisdiction over a habeas petition that raises an affirmative defense to state prosecution before trial and conviction can have the same effect as a direct injunction of ongoing state proceedings.") (citing *Carden*, 626 F.2d at 83).

[26] *Brown,* 676 F.3d at 903.

[27] *Page,* 932 F.3d at 903.

[28] *See Carden*, 626 F.2d at 84 (citing *Perez*, 401 U.S. at 85).

[29] *See Braden*, 410 U.S. at 488 (allowing petitioner to raise speedy trial claim prior to trial under 28 U.S.C. § 2241, where he had exhausted available state remedies); *Stow*, 389 F.3d at 886; *Reem*, 2017 WL 6765247, at *2 ("The exhaustion requirement addresses the same concerns of comity between federal and state courts as *Younger* does. *See Dickerson v. State of La.*, 816 F.2d 220, 225–26 (5th Cir. 1987) ('The exhaustion doctrine of section 2241(c)(3) was judicially crafted on federalism grounds in order to protect the state courts' opportunity to confront and resolve initially any constitutional issues arising

statutory exhaustion requirement for a petition brought under § 2241, principles of federalism and comity require the court to abstain until all state criminal proceedings are completed, and the petitioner exhausts the available state judicial remedies, unless extraordinary circumstances warranting federal intervention prior to a state criminal trial are found. A violation of the right to a speedy trial is not, alone, an extraordinary circumstance warranting federal intervention.[30]

This Court should only address Mr. Weedman's speedy trial claim, if at all, after he fully exhausts his state court remedies.[31]

## IV. Reasonable Bail

Further, the due process clauses of the Fifth and Fourteenth Amendments bar pretrial detention unless detention is necessary to serve a compelling

---

within their jurisdictions as well as to limit federal interference in the state adjudicatory process.').").

[30] *Carden*, 626 F.2d at 83–85.

[31] *See, e.g., Stack*, 342 U.S. at 6–7 ("While habeas corpus is an appropriate remedy for one held in custody in violation of the Constitution, … 28 U.S.C.A. § 2241(c)(3), the District Court should withhold relief in this collateral habeas corpus action where an adequate remedy available in the criminal proceeding has not been exhausted.") (citation omitted); *Webb v. Simpson,* Case No. 3:19-CV-5561-BHS-DWC, 2020 WL 589818 at *1 (W.D. Wash. Jan. 6, 2020) (slip op.) ("Petitioner alleges his constitutional rights are being violated, including violations of his right to be free from excessive bail and his right to a speedy trial.… Petitioner has not shown there is an absence of available state corrective processes or that circumstances exist rendering any state process ineffective.").

government interest.[32]   Thus, although a state may "impose conditions on an arrestee's release, such as bail … [b]ail set at a figure higher than an amount reasonably calculated to fulfill [its] purpose [of assuring the presence of the accused at trial] is 'excessive' under the Eighth Amendment."[33]   In addition, in both state and federal criminal cases, when determining reasonable bail, courts are required to consider concerns related to a victim's safety.[34]   Mr. Weedman's request that he be released from incarceration raises the issue of whether the state has set appropriate conditions on his release pending trial.[35]

---

[32] *Reem v. Hennessy*, Case No. 17-cv-06628-CRB, 2017 WL 6765247, at *1 (N.D. Cal. Nov. 29, 2017) (unpublished) (citing *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 780 (9th Cir. 2014)).

[33] *Id.* (quoting *Lopez-Valenzuela*, 770 F.3d at 777).

[34] *See United States v. Quintero,* 995 F.3d 1044, 1056–57 (9th Cir. 2021); *Shepersky v. State,* 401 P.3d 990, 993–94 (Alaska App. 2017).

[35] *See Reem*, 2017 WL 6765247*,* at *2 ("A number of circuit courts have entertained habeas petitions alleging unconstitutional detention or excessive bail prior to trial.") (citing numerous cases involving state pretrial detainees); *see also Davie v. Villanueva*, No. CV 20-6580 MWF (PVC), 2020 WL 4901611, at *3 (C.D. Cal. Aug. 20, 2020) ("[T]o the extent that he is seeking release on zero or reduced bail prior to trial due to health concerns arising from the coronavirus pandemic, this claim overlaps with his excessive bail claim. Furthermore, state courts can and do offer an adequate forum to litigate such claims.") (noting that a state appellate court granted "in part pretrial detainee's habeas petition seeking release on bail and order[ed] trial court to hold a hearing to 'consider entering a new and different order setting bail consistent with the [county's] June 23, 2020 amended bail order,' which was adopted to address inmate overcrowding during the COVID-19 pandemic.") (citation omitted).

In Mr. Weedman's state criminal case, bail has been set at $5,000 cash.[36] Mr. Weedman attached law enforcement reports to his Petition, stating that Emilyn Jordan, his wife and the victim of the assault for which he is charged, was medevacked from Manokotak to Dillingham, Alaska for "numerous facial fractures, a possible skull fracture, and a possible brain injury…. Jordan's medical records stated that she had a risk of an airway compromise and that she may have aspirated blood or other fluids during the assault. Therefore, Assault 1 was added as a charge ...."[37] An officer observed that "Jordan had multiple bruises on both lower legs as well as some bruising and lacerations on her knees…. [H]er face was extremely swollen and bruised. Both of her eyes were completely swollen shut."[38] The victim spent a week and a half to two weeks in the hospital in Anchorage.[39] In addition, an officer who transported Mr. Weedman to the Dillingham Jail "observed dried blood on both of his hands as well as dried blood on his face. There were no injuries on him … that would explain all the dried blood that was on his face and hands."[40]

---

[36] Docket 1-1 at 1 (8/14/19 Temporary Order in 3DI-19-00346CR); *id*. at 21 (10/23/19 Temporary Order providing that "bail remains as previously set").

[37] *Id*. at 9 (8/13/19 Alaska Public Safety Incident Report).

[38] *Id*. at 15 (8/13/19 General Report by #CSM3 Markiewicz, C.).

[39] Docket 1-2 at 10–11 (10/23/19 Transcript of Grand Jury Proceedings).

[40] Docket 1-1 at 7 (8/13/19 Affidavit of Alaska State Trooper Markiewicz).

Moreover, Mr. Weedman attached an Order to Modify or Revoke Probation in a previous case, requiring him to serve 45 days of suspended jail time, and prohibiting him from possessing illegal substances.[41] His victim in the current case "believes [he] was 'blacked out' from consuming too much alcohol when he assaulted her. Weedman wouldn't assault Jordan if he was sober [and] had never assaulted [her] before this incident."[42]

Given the severity of the medically-confirmed injuries, Jordan's statement and testimony asserting that Mr. Weedman assaulted her,[43] and his apparent past and present issues with substance abuse, the Court finds that the state court is appropriately considering the amount of reasonable bail necessary to protect the victim and the public from harm prior to trial. Thus, there is no need for federal intervention on the issue of reasonable conditions of release.

## V.    Speedy Trial Analysis

The four-part test articulated by the Supreme Court in *Barker v. Wingo*[44] is used to determine whether government delay had abridged a defendant's Sixth

---

[41] Docket 1-2 at 31 (6/25/12 Order).

[42] Docket 1-1 at 19 (Jordan interview).

[43] *See, e.g., id.* at 18–19 (Jordan's interview); Docket 1-2 at 7–11 (10/23/19 Transcript of Grand Jury Proceedings, victim's testimony).

[44] 407 U.S. 514, 530 (1972).

Amendment right to a speedy trial.[45]  The factors to be considered in an inquiry

under *Barker* include:  "(1) the length of the delay; (2) the reasons for the delay;

(3) the accused's assertion of the right to speedy trial; and (4) the prejudice caused

by the delay.  No single factor is necessary or sufficient."[46]  However, "[t]he length

of delay is the threshold factor."[47]

### A.    Length of Delay

When examining a § 2241 petition from a pretrial detainee claiming a

violation of his or her right to a speedy trial, a significant delay in the proceedings

must be shown.[48]  "[T]o trigger a speedy trial analysis, an accused must allege that

the interval between accusation and trial has crossed the threshold dividing

ordinary from 'presumptively prejudicial' delay, since, by definition, he cannot

---

[45] *McNeely*, 336 F.3d at 826 (citing *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992)).

[46] *Id.* (citing *Barker*, 407 U.S. at 530); *see also United States v. Sheikh*, No. 2:18-cr-00119 WBS, ___ F. Supp. 3d ___, 2020 WL 5995226, at *3 (E.D. Cal. Oct. 9, 2020) (Discussing the right to a speedy trial in a federal criminal case, explaining that "the coronavirus alone does not give the court the liberty to simply exclude time.  Rather, the court must conduct a 'deliberate inquir[y] into whether an ends-of-justice continuance is justified by the circumstances surrounding a particular case.'") (citation omitted).

[47] *United States v. Myers,* 930 F.3d 1113, 1119 (9th Cir. 2019) (citing *Doggett*, *supra*).

[48] *See Barker,* 407 U.S. at 530–31.

complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness."[49]

The Alaska Superior Court record shows that Mr. Weedman was arraigned less than two years ago.[50] In *McNeely v. Blanas*,[51] the Ninth Circuit found a delay of three years to be substantial, such that prejudice was presumed, triggering an inquiry under *Barker v. Wingo*.[52]

Finally, Mr. Weedman's reliance on 18 U.S.C. § 3161(h) is misplaced,[53] because the *federal* Speedy Trial Act does not apply to trials in *state* courts.[54]

Mr. Weedman has not met the "threshold factor" required to state a speedy trial claim.[55]

## B.     Reasons for Delay

As explained by the Court of Appeals for the Ninth Circuit, in addressing the suspension of federal jury trials due to the COVID-19 pandemic:

---

[49] *Myers,* 930 F.3d at 1119 (quoting *Doggett*, 505 U.S. at 651–52) (further internal quotation marks omitted).

[50] *Alaska v. Weedman,* 3DI-19-00346CR (8/14/19).

[51] 336 F.3d 822, 826 (9th Cir. 2003).

[52] 407 U.S. 514, 530 (1972).

[53] *See* Docket 1 at 6.

[54] *See* 18 U.S.C. § 3161(h).

[55] *Myers,* 930 F.3d at 1119.

The global COVID-19 pandemic has proven to be extraordinarily serious and deadly. In response, many state and local governments entered declarations curtailing operations of businesses and governmental entities that interact with the public. Beginning on March 13, 2020, the Central District of California—in light of the exigent circumstances brought on by the pandemic and the emergencies declared by federal and state officials—issued a series of emergency orders….

Each order was entered upon unanimous or majority votes of the district judges of the Central District with the stated purpose "to protect public health" and "to reduce the size of public gatherings and reduce unnecessary travel," consistent with the recommendations of public health authorities.[56]

The Covid-19 pandemic was not an "excuse for delay," and was not an indication of state corruption, as claimed by Mr. Weedman.[57] Such assertions are frivolous.[58] Frivolousness may include not only allegations that "lack an arguable basis in either law or in fact," but allegations that are clearly "fanciful," "baseless," "fantastic," or "delusional."[59] The pandemic provided solid, legitimate reasons to reduce public gatherings, especially indoors, to protect the public.[60]

---

[56] *United States v. Olsen*, 995 F.3d 683, 687 (9th Cir. 2021) (citations omitted).

[57] Docket 1 at 7.

[58] *See* https://alaska-coronavirus-vaccine-outreach-alaska-dhss.hub.arcgis.com (as of 7/6/21, over 33 million Covid-19 cases and over 600,000 deaths in the U.S.; 68,478 Covid-19 cases and 370 Alaska resident deaths; and nearly 4 million Covid-19 deaths reported worldwide).

[59] *Denton v. Hernandez*, 504 U.S. 25, 31-33 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325–28 (1989)).

[60] *See, e.g.*, http://www.courts.alaska.gov/covid19/docs/socj-2020-8130.pdf (3/15/20 Special Order No. 8130 of the Chief Justice of the Alaska Supreme Court: "On March 11, 2020, Governor Dunleavy issued a Public Health Disaster Emergency due to the potential

"By contrast, if the government acted in bad faith, for instance, by making '[a] deliberate attempt to delay the trial in order to hamper the defense,' such delay must 'be weighted heavily against the government.'"[61]

## C.      Accused's Assertions of Right to Speedy Trial

Mr. Weedman asserts that he has not challenged his alleged unconstitutional confinement on appeal because of "fear & corruption of the judicial threats."[62]  He claims that "[s]ince day one [he has] ask[ed] for [a] speedy trial & [his] counsel avoid[s] [him]."[63]  He also claims that he "did not consent to any continuance," but that "no one listen[s] to [him]."[64]

## D.      Prejudice Caused by Delay

Long delays before trial tend to be prejudicial.  The Supreme Court has

> observed in prior cases that unreasonable delay between formal accusation and trial threatens to produce more than one sort of harm, including "oppressive pretrial incarceration," "anxiety and concern of the accused," and "the possibility that the [accused's] defense will be impaired" by dimming memories and loss of exculpatory evidence.… Of these forms of prejudice, "the most serious is the last, because the

---

spread of the novel coronavirus disease.  On March 13, President Trump declared that the novel coronavirus outbreak constitutes a national emergency.  On March 13, Governor Dunleavy issued a mandate closing all public schools statewide ....").

[61] *Myers*, 930 at 1119 (citing *Barker*, 407 U.S. at 531).

[62] Docket 1 at 3.

[63] *Id*. at 7.

[64] *Id*. at 7–8.

inability of a defendant adequately to prepare his case skews the fairness of the entire system."[65]

The state courts can consider prejudice, along with the other factors listed above, when addressing speedy trial claims brought in Mr. Weedman's criminal case, if he meets the threshold factor that the length of delay violates his right to a speedy trial. The claims brought to this Court are premature.

Therefore, **IT IS HEREBY ORDERED:**

1.    This case is DISMISSED without prejudice to pursuing appropriate claims in the state criminal case, and in state appeals.

2.    All outstanding motions are DENIED.

3.    The Court, having concluded that Petitioner has not made a substantial showing of the denial of a constitutional right, DENIES a certificate of

---

[65] *Doggett v. United States,* 505 U.S. 647, 654 (1992) (quoting *Barker*, 407 U.S. at 532)) (additional citations omitted).

appealability.[66]   Any further request for a Certificate of Appealability must be

addressed to the Ninth Circuit Court of Appeals.[67]

       4.     The Clerk of Court shall enter a Judgment accordingly.

Dated at Anchorage, Alaska, this 9th day of July, 2021.


                              */s/ Ralph R. Beistline*
                              RALPH R. BEISTLINE
                              Senior United States District Judge

---

[66] *See* 28 U.S.C. 2253(c)(1).  Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--
    (a) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court …
    (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
    (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).
    *See Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (citation omitted); *see also Wilson v. Belleque*, 554 F.3d 816, 824 (9th Cir. 2009) ("We conclude that the mere fact that a habeas petition is filed pursuant to § 2241(c)(3) does not exempt that petition from § 2253(c)(1)(A)'s COA requirement."
    For the reasons set forth in this Order, Mr. Weedman has not made a substantial showing of the denial of a constitutional right, or that jurists of reason could disagree with the district court's resolution, or that he deserves encouragement to proceed further. *Banks*, 540 U.S. at 705.  Mr. Weedman has not been incarcerated for a substantial time under federal law, especially considering the pandemic that delayed criminal proceedings nation-wide.  Mr. Weedman may make his arguments in his state criminal proceedings.

[67] *See* Fed. R. App. P. 22(b); 9th Cir. R. 22-1.